UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------X

UNITED STATES OF AMERICA,

   -against-

                               IND. NO.: 10 Cr. 225 (SRU)

BRUCE D'AMICO,

         Defendant.

-------------------------------------------------X

**SENTENCE MEMORANDUM
FOR DEFENDANT BRUCE D'AMICO**

Defendant Bruce D'Amico submits the following memorandum of law for the Court's

consideration regarding the appropriate sentence to be imposed herein

**PRELIMINARY STATEMENT**

Defendant Bruce D'Amico stands before the Court for sentencing, as a result of his entering

a plea of guilty to a single count of the indictment charging Sex Trafficking of a Minor, in violation

of 18 U.S.C. §1591(a)(1) and (b)(2). The plea was entered pursuant to a plea agreement wherein the

parties have agreed that the applicable sentence guidelines in this case are based upon a criminal

history category of II, and a net offense level of 31 with the resulting guideline range of 121 to 151

months incarceration.[1] The Court should note that at the time of entering of the plea, Counsel clearly

stated on the record that the Crime History Category was in fact Category II because the points

---

[1] See plea agreement page 4. The plea agreement initially discussed a Crime History Category of III but with the possibility that it would be Category II because of the fact that one of his past convictions was for the same conduct charged herein by Connecticut State Authorities. The Court should note that this fact is noted in the Pre-Sentence Report filed herein by the US Probation Department and the Court should note that the Connecticut State prosecution was vacated and dismissed via a motion nolle prosequi by the prosecutors therein after the entry of the plea herein.

assessed for a plea and conviction in the Connecticut Superior Court were for the same conduct as charged in the instant federal indictment wherein Defendant was entering his plea of guilty. The US Probation Department in its Pre-Sentence Report ("PSR") filed herein agrees that the appropriate guideline range is offense level 31 with a Crime History Category of II with the above stated sentence range of 121 to 151 months.

Between the acceptance of the Plea of Guilty by the Court herein and the filing of the PSR, Counsel appeared in the Connecticut Superior Court, Hartford Division, on May 15, 2013, where upon the motion of the State Attorney, the plea and conviction in the State Court was vacated and, further, the Superior Court granted the State Attorney's motion to dismiss the charges under a motion to be denoted nolle prosequi. Defendant's Crime History score is and should be Category II.

Counsel for Mr. D'Amico respectfully requests that the Court make a finding as to the exact dates that defendant was in custody so that there is a factual basis for the Bureau of Prisons to properly calculate his sentence and give him the appropriate credit for the entire time he has been in custody for the charges herein and the related charges prosecuted by the State authorities for the same conduct as charged herein. In short, we submit that Mr D'Amico has been in continuous custody from January 22, 2010 to the date of his sentence being imposed herein. We will discuss this issue further in Points III and IV herein.

We have reviewed the pre-sentence report ("PSR") filed by the Probation Department. As per the Rule 32(b)(6) of the Federal Rules of Criminal Procedure ("FRCP") and the direction of the Court, we submitted our objections and requests for corrections to the appropriate US Probation Officer herein. A copy of that objection letter was submitted to the Court and the government, as per the Court's direction.

Included in our objections to the PSR was a general objection to the factual scenario supplied by the government, at page 4 paragraphs 5 through 27, under the heading "The Offense Conduct." We will discuss these objections with more particularity in Points I and II herein.

We, however, ask the Court to accept our position that while we make general and specific objections to matters stated in this section of the PSR, we are not asking for a Hearing to Determine the factual assertions therein and herein. We are not asking the Court to make specific factual determinations here to specifically amend the factual statements in the Offense Conduct sections.

We are asserting same only to have our position as to several issues understood by the Court and to have the Court consider our position in its determination regarding the appropriate sentence to be imposed herein.

One very important issue is related to the age of the woman who is claimed to be under the age of 18. She is named as MV1 in the PSR. We accept the government's representation that this woman was in fact under 18 when she met the Defendant. We submit, however, that whether the Defendant was aware of that or, on the contrary, believed she was over 18 at the time he dealt with here herein is not relevant due to the language contained in the statute of conviction herein. We will discuss this further below, but in short we emphasize that the Statute herein (18 §1591) was intentionally drafted by Congress to eliminate the government having to prove that the defendant actually knew the woman was underage.

The government, to date, has not filed any objections to the PSR with the Probation Department as noted by the Probation Department's addendum to the PSR.

Counsel for Mr. D'Amico respectfully requests that the Court impose a sentence of incarceration below the lowest end of the applicable guidelines of 121 months and impose a sentence

of no more than 120 months herein which is required due to the mandatory minimum in the statute of conviction.[2]

We will be further arguing that since the Defendant has no financial ability to pay a fine that no fine should be imposed herein. We will also discuss that no restitution be imposed.

Lastly, Counsel for Mr. D'Amico requests that the Court include in the Judgment of Conviction, in addition to the date of his incarceration since January 22, 2010 and that none of this prior custody is or has been credited against another sentence, a recommendation to the Bureau of Prisons ("BOP") that Mr. D'Amico be considered for the Drug and Alcohol Treatment programs and that he be designated to a facility nearest his parent's home in Floral Park NY, to wit, Fort Dix FCI in Fort Dix NJ. Fort Dix FCI is one of the major facilities with a drug and alcohol treatment program.

## OVERVIEW OF RELEVANT LEGAL AUTHORITY

18 U.S.C. §3553(a) reads in pertinent part:

"The Court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     The need for the sentence imposed—

(A)     To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[2]  The Court should note that we are of the opinion that the Defendant should be sentenced to a term less than 120 months but are precluded from same due to the statutory mandatory minimum of 120 months for the statute of conviction herein.

> (B)    To afford adequate deterrence to criminal conduct;
>
> (C)    To protect the public from further crimes of the defendant;
>
> (D)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)    The kinds of sentences available;
>
> (4)    The kinds of sentence and the sentencing range established . . . [by the Sentencing Guidelines]; . . . [and]
>
> (5)    Any pertinent policy statement . . .

18 U.S.C. § 3553(a) (some minor alterations not noted).

Though the Guidelines are an important factor in the sentencing analysis, they are only advisory and the Court is generally free to impose a non-Guidelines sentence. *United States v. Gall*, 552 US 38, 128 S.Ct. 586 (2007); *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). "The sentencing judge should decide after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.,* a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005); *see also, United States v. Castillo*, 460 F.3d 337, 352 (2d Cir. 2006).

The Second Circuit erased any doubt as to the degree of discretion that the District Courts have in making sentencing determinations: "A sentencing judge has *very wide latitude* to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (*en banc*) (italics supplied). The *Cavera* court elaborated as to the proper role of the Guidelines in the sentencing calculus and a District Court's concomitant authority to issue a non-Guidelines sentence:

The Guidelines provide the "**starting point and the initial benchmark**" for sentencing, *Gall,* 128 S.Ct. at 596, and district courts must "remain cognizant of them throughout the sentencing process," *id.* at 596 n. 6. **It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory**. **A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense**. **District judges are, as a result, generally free to impose sentences outside the recommended range**. When they do so, however, they "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597. **In this way, the district court reaches an informed and individualized judgment in each case as to what is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing**. 18 U.S.C. § 3553(a).

*Cavera*, 550 F.3d at 189 (emphasis added) (footnotes omitted).

In *Cavera*, the Court of Appeals sitting *en banc* made clear that it would "not substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case." *Cavera*, 550 F.3d at 189. The Court emphasized that it would not second guess the determinations of the District Court: "To the extent that our prior cases may be read to imply a more searching form of substantive review, we today depart from that understanding." *Cavera* 550 F.3d at 189. By way of example of the type of review that it will no longer conduct, the Court cited *United States v. Cutler,* 520 F.3d 136, 164, 167 (2d Cir.2008), in which it reversed a downward departure on medical grounds.

## POINT I

DEFENDANT ASSERTS THAT MANY OF THE FACTUAL ALLEGATIONS FOUND IN PARAGRAPHS 5 THROUGH 27 ARE INACCURATE.

In late April, 2013, counsel received a copy of a letter from AUSA David Novick addressed to USPO Mark Myers outlining the government's position regarding the offense conduct to be

incorporated into the PSR. As noted in paragraph 5 of the PSR herein, the government's summary of offense conduct was presented virtually word-for-word as paragraphs 6 through 27 of the PSR. After consultation with defendant herein, counsel submitted objections to the PSR on June 17, 2013. Thereafter, Counsel has received an Addendum to the PSR, prepared by the Probation Department.

We wish to emphasize that we are not requesting that the Court make any specific determinations regarding the Offense Conduct portion of the PSR found at paragraphs 5 through 27, nor are we asking that a hearing be held to determine the factual underpinnings of this matter in order for the Court to arrive at a proper sentence.

We do wish to point out that the government's version is exactly that, the government's version. We ask the Court to consider the discussion found here and the discussion in the successive sections of this memorandum in order for the Court to decide upon a proper sentence to be imposed herein under 18 U.S.C. §3553(a).

We request that the Court consider the following to place this matter in its appropriate context.

Defendant Bruce D'Amico was engaged in an activity wherein he would place ads with primarily two web sites in order to solicit people to contact several woman for the purposes of their engaging in prostitution. For this he would receive $100 from each woman for each day that he ran an ad for that woman. All of the responses by prospective customers to the ads were made directly with the woman involved, not to him. He would have no further contact with the woman or the persons answering the ads regarding where they were to meet, how much was being charged, how much the woman actually received, etcetera. All funds negotiated and received by the women for engaging in prostitution activity were kept by them personally. Defendant never knew the prices

charged or received any percentage of same therefrom.

The PSR discusses five women whose names do not appear, but are denoted using initials, to wit, C.R., A.F., S.M., N.M., AND MV1. Defendant placed ads for A.F., S.M., N.M. AND MV1. Defendant did not place ads for C.R. C.R. was working for another person who was a traditional pimp who shared in and controlled the monies received by his women. Defendant knew that C.R. was staying with one of the woman for whom he was placing ads and was working off that person's ads. Defendant did nothing to attempt to collect ad fees from C.R. He did not want to work with C.R.

Defendant disliked C.R. and C.R. made it known it was mutual. Defendant did not trust her and did not place ads for her. Defendant did not want to have anything to do with her activities involving prostitution and selling drugs. Most of her statements reflected in the PSR are false and self serving. As an aside, we wonder whether she gave statements about her pimp and drug sources to the government.

Regarding MV1, the "factual" statements in the Offense Conduct sections at paragraphs 20 through 24, several comments must be asserted herein. At paragraphs 20 and 21, the PSR states that sometime in June 2009, she relapsed on drugs and ran away from her mothers's house. Some time later, she met a few women who were "working" for the defendant. Then, she made her "first foray into prostitution" and a couple of days later, after meeting the defendant, he agreed to let her work for him. He then placed ads for her on the internet.

This is simply false. The scenario depicted in the PSR is attempting to suggest that Mr D'Amico enticed this troubled run-a-way young woman into prostitution. MV1 was engaging in prostitution for several years before she met Mr. D'Amico. After being introduced to him, he was

reluctant to place ads for her because he was unsure if she was 18. He discussed this with her and she assured him she was nearly 19 as her birthday was coming up in a few days.

Before, Defendant agreed to place any ads for MV1, she was arrested with another woman in Queens NY for prostitution by undercover officers. The other woman was charged with prostitution and MV1 was charged with loitering for the purpose of prostitution. She pleaded guilty in Queens Criminal Court to that charge as a criminal violation. Defendant has stated to counsel that when he was informed of the arrests of these two women he ran a computer search and discovered that MV1 pleaded guilty to the Loitering/Prostitution charge. In the court documents, MV1 told the police and the Court she was 18 years old. It was after that event that Defendant agreed to place ads for her on the internet.

Counsel wishes to emphasize that whether her age as stated to him by MV1 herself or as indicated in the NYPD records discussed above was accurate is not relevant under this statute. Additionally, even though Defendant believed it to be true that MV1 was 18 or over, he entered his plea herein knowingly. Most importantly, Defendant has no intention to withdraw his plea or attack same in any forum, on the grounds that he was unaware of her true age and believed that she was over 18 at the time.

Unfortunately, under the statute herein, it does not matter that the defendant was unaware of her true age being under 18 years old. The statute sets up a strict liability situation wherein it is the actual age of the woman involved that matters, if the defendant had a reasonable opportunity to view her.

We do not herein wish to withdraw this pleading nor contest the propriety of the statutory scheme no matter how poorly it was drafted. However, it is important for the Court to know this was

not a clear situation where it was obvious that this woman was under age and the defendant disregarded same. Defendant had his doubts. He took the word of the woman and performed computer research which apparently misinformed him that the woman was over 18.

We ask the Court to consider this situation for the purpose of understanding the context of the situation and treat the Defendant accordingly in the imposition of the sentence herein. The fact that this statute is written the way it is and, in our opinion, is poorly set out is not relevant herein. We are not asking for any ruling on the propriety of this statute. That will be an argument in another case on another day, not here. We persist in the plea herein.

Another point that we ask the Court to recognize is that these women including MV1 did not **work** for the Defendant as is repeatedly stated in the PSR. He did not handle their money or monitor their meetings with customers. Whether these woman booked 100 customers or none each day was of no import to the Defendant. If he posted an ad, he was to receive $100. He did help them on many occasions but he did not control them as per the traditional pimp/prostitute relationship.

One other point was raised by one of women and mentioned in the offense conduct in a few places. Defendant never had the ability to listen to and/or record the incoming calls on the phones he supplied to the various women. The phones had devices so that blocked or private calls were unblocked to reveal their incoming phone numbers. The conversations could not be over heard.

## POINT II

> DEFENDANT ASSERTS THAT MANY OF THE FACTUAL ALLEGATIONS FOUND IN PARAGRAPHS 28 THROUGH 32 ARE INACCURATE, SELF SERVING AND AN ATTEMPT TO BOLSTER MV1'S MOTHER TO IMPACT A CLAIM FOR RESTITUTION.

We object to the statements contained in these paragraphs as an attempt to distort the truth

and blame the Defendant for the plight of this young woman named as MV1 herein. As stated above, MV1 was a long time drug abuser and repeated runaway many years before she was introduced to Defendant Bruce D'Amico. It is not our intent to disparage or attack MV1 or her mother, but it is important for the Court to understand that this young woman was abusing drugs, was in and out jail for various offenses and was selling her body in prostitution long before she met Bruce D'Amico.

Long before she met Bruce D'Amico she was a frequent run away from her mother. She was staying with a man in Hartford CT who was plying her with drugs and taking a large portion of her prostitution earnings. MV1 was working the streets around Hartford CT. This man handled all of her money. After a while, MV1 started staying with a woman who was also a prostitute and whom she knew for some time. She talked with this woman about how to get away from her abusive handler/pimp. This woman was placing ads through the Defendant and suggested that MV1 break away from her abusive pimp and place ads on the internet through the Defendant, instead of working the streets for her pimp. In this way she could control her meetings and decide for herself when and where she would ply her trade.

The reality is that the scenario by MV1's mother in paragraph 30 is an illusion which never happened. Unfortunately, this young woman was abusing her body and herself long before she met the defendant herein. Bruce D'Amico did not introduce this young woman to drugs and/or prostitution.

There is no doubt this young woman has suffered severe trauma from her election to run away from her home, abuse drugs and sell her body in prostitution. However, it is not Bruce D'Amico who did this to her. If anything, Bruce D'Amico after being convinced that she was over

18helped her to get away from her abusive pimp and drug dealers who controlled her. Further, he removed her from having to walk the streets as a prostitute looking for customers.

These few paragraphs in the PSR are a distorted attempt to gain financial remuneration by this mother with no measure of truth as to responsibility for the plight of her daughter and the world her daughter chose. It is an clear attempt to blame Bruce D'Amico for the plight of her daughter and get money in return.

We ask the Court to disregard the effort by this person to financially gain from the unfortunate choices made by her young daughter and her own responsibility for the plight of her daughter.

**POINT III**

THE COURT SHOULD DIRECT THAT THE PSR SPECIFICALLY NOTE THAT THE PERIOD FROM JANUARY 22, 2010 TO THE DATE OF SENTENCE IS TIME SERVED BY THIS DEFENDANT AS PRIOR CUSTODY WHICH IS RELATED TO THE PRESENT SENTENCE AND WAS NOT CREDITED AGAINST ANY OTHER SENTENCE.

Under Federal Law, it is clear that the Bureau of Prisons, and not the Court, is the only authority who can grant or deny credit for time served prior to the date of sentence. See 18 U.S.C. §3585(a). See also, United States v. Montez-Gavira, 163 F.3d 697, 700.

The Court has no authority to credit time retroactively. However, the Court can direct that the PSR and the Judgment of Conviction both accurately reflect the relevant information, dates in custody, etcetera, all of which will affect the determinations by the BOP regarding calculation of sentence, credit for prior service, security classification, designation and eligibility for various programs. The BOP considers the PSR as the primary authority for the facts to be considered in their determinations. If this information is not specifically stated in the PSR it will likely be missed by

the BOP.

Under 18 U.S.C. §3585(a), a federal sentence commences on the date that a defendant is received into custody to serve that sentence. Any credit for prior custody is controlled by 18 U.S.C. 3585 (b). The plain language therein prohibits any credit for time served prior to the commencement of the sentence (date of sentence here) if it was credited against another sentence.

Defendant Bruce D'Amico was arrested by the Bloomfield Police on January 22, 2010 and subsequently charged with, inter alia, promoting prostitution as a felony. He was arraigned in the Connecticut State Courts in the Hartford Division and has remained in continuous custody of the Connecticut Courts until May 15, 2013 when he was released by the Connecticut Superior Court, Hartford Division, and was ordered to be turned over to federal custody pursuant to the federal detainer for the charges herein. He has remained in custody continuously from January 22, 2010 up to the date that this federal sentence is to be imposed, now scheduled for July 12, 2013.

Later that year in November 2010, he was arrested by federal authorities for the charges in this indictment. He was arraigned in this court on November 18, 2010, before US Magistrate Judge Garfinkle and ordered detained. That Order of Detention has remained in effect to date.

The federal charges herein cover the exact same and related alleged conduct as charged in the Bloomfield CT arrest above mentioned. Eventually, Mr. D'Amico entered a plea of guilty to the promoting prostitution charges in the Connecticut Superior Court, Hartford Division before the Honorable Joan K Alexander, who indicated that the plea would be vacated if he was found guilty and sentenced in the Federal Court for these charges to a term of 10 years or more. He was later sentenced to serve 10 years by the Connecticut Superior Court.

As a result of the pleading here, where there is a 10 year mandatory minimum, the

Connecticut State Attorney's Office agreed to join in Defendant's motion to vacate the State conviction and dismiss the State matter. On May 15, 2013 in the Connecticut Superior Court, Judge Alexander granted the motion to vacate the conviction and granted the State Attorney's motion to dismiss the indictment under a motion for nolle prosequi. The Court further ordered the defendant be released from State custody and turned over to the federal authorities pursuant to his federal detainer for the matter herein. Defendant is now in federal custody.

It is absolutely clear that all of the time Mr D'Amico has spent in custody from his arrest on January 22, 2010 is not being attributed against any other sentence as a result of his State charges being dismissed. All of his so called prior custody should now be credited toward his sentence in this matter, including the time in State custody for the same offense conduct as herein.

However, this will only happen if the PSR and the Judgment of Conviction clearly show these facts, so that the BOP can properly adjudge the situation and grant him credit for prior custody as per statute.

The PSR, on page 12 at paragraph 52, lists the date of his arrest on Connecticut promoting prostitution charges to be January 22, 2010. However it is unclear that it is the date to used by the BOP to determine the prior custody to be credited for several reasons. Most importantly, this January 22, 2010 date it is contradicted by the statement at page 4, paragraph 4 of the PSR which it states that Mr D'Amico has remained in custody since his state arrest on May 11, 2010. We ask that this date be changed.

We ask that the PSR be amended with a clear statement the January 22, 2010 arrest for promoting prostitution is for the same and related conduct that is charged in the instant federal indictment and more particularly the count in this indictment for which the sentence herein is to be

imposed herein.   Further we ask that there be a clear statement in the PSR that Mr. D'Amico has

been in continuous custody from January 22, 2010 up and including the date of sentencing herein.

Lastly, we request that there be a clear statement that **none of this prior custody time has**

**been or will be attributed against another sentence**.

With these clear statements in the PSR, Defendant Bruce D'Amico, the BOP will see that

he should be credited with this time in prior custody by the BOP under  18 U.S.C. §3585(a) and (b).

## POINT IV

THE COURT SHOULD NOTE IN THE JUDGMENT OF
CONVICTION THE PERIOD FROM JANUARY 22, 2010 TO THE
DATE OF SENTENCE IS TIME SERVED BY THIS DEFENDANT
WHICH IS RELATED TO THE PRESENT SENTENCE AND WAS
NOT CREDITED AGAINST ANY OTHER SENTENCE.

It is settled law that the time to be credited to a sentence prior to the date of sentence is to be

determined by the BOP not the Court.  See USC §3585(b)(1);  United States v. Wilson, 503 US 329,

334, 117 L.Ed. 2d. 593, 112 S.Ct. 1351 (1992);  United States v. Luna-Reynoso, 258 f.3d 111, 117

(2d Cir 2001);  Werber v. United States, 149 F.3d 172 (2d Cir. 1998).

As argued in the previous section, there must be a factual basis for the determination by the

BOP regarding this issue.  In the instant case, we have requested in the previous section that  the

Probation Department specifically state that the PSR reflect the exact dates that Mr. D'Amico was

arrested by Connecticut authorities for charges therein which were for the same or related conduct

comprising the offenses charged here.  In the PSR, they listed the date that the defendant was

arrested herein as November 18, 2010 and his arrest  by the State authorities as May 11, 2010.

These are factually incorrect.  He was arrested for the same offense conduct by the State on January

22, 2010, not May 11, 2010 or November 18, 2010.[3]

In the prior section, we requested that the Court to direct that the PSR list the correct date upon which Mr. D'Amico was arrested and continuously detained subject to the conduct comprising the instant case as January 22, 2010 and that the PSR indicate that none of this time in custody has been or will be credited toward any other sentence.

Equally important to the requested changes in the PSR, we also request that the Court add that same information in the Judgment of Conviction, so that it may be properly considered by the BOP when they make their determinations regarding the computation of defendant's sentence, credit for time served prior to the date the sentence was imposed herein, and the allocation of good time credits to be awarded on the instant sentence. We ask that these settled facts be written in the section of the Judgment under the heading of Judicial Recommendations to the BOP to insure they give proper consideration to these facts.

## POINT V

### THE COURT SHOULD IMPOSE NO FINE HEREIN.

As stated in the PSR, Defendant Bruce D'Amico has no ability to pay a fine. Therefore, we respectfully request that no fine be imposed herein.

## POINT VI

### THE COURT SHOULD DECLINE TO ORDER RESTITUTION HEREIN.

Similarly as stated in the PSR, Defendant Bruce D'Amico has no available funds with which to pay any financial penalties herein and, since he will be incarcerated for many years, he has no ability to earn funds make restitution herein.

---

[3] See PSR at page 1 under the heading "Date of Arrest" and at page 3, paragraph 3.

More importantly, the basis for any restitution claim is regarding the rehabilitation for the alleged harm done to this MV1 person. As argued above, unlike the self serving pleas of her mother denoted in paragraphs 29 through 32, which we discussed above, Bruce D'Amico was not the one who introduced this young woman to the world of drugs, prostitution and other improper activities.

The Court should also consider that Defendant only knew and placed ads for MV1 for a short period of time, to wit, substantially less than one year before he was arrested by the State authorities. We ask the Court to review and we repeat here the points made in Point II at pages 10 through 11. In sum, this woman (MV1) was engaged in prostitution and drug abuse for several years prior to her meeting the Defendant herein.

We are not asking that the Defendant's activities be excused or he be rewarded for his efforts to get this woman and other women to break away from their abusive and controlling pimps, procurers and drug dealers, but an understanding that he is not the one who is responsible for these women and especially MV1 and their reasons and decisions to engage in these activities. MV1 unlike the illusory story spun by her mother was long engaged in prostitution, drug abuse and other similar activities long before she met this Defendant.

We submit that placing the brunt of responsibility on him by way of restitution is misplaced and thus we request that the Court decline to impose a restitution penalty as part of the sentence to be imposed herein.

## POINT VII

**THE COURT SHOULD INCLUDE IN THE JUDGMENT OF CONVICTION HEREIN THE FOLLOWING RECOMMENDATIONS TO THE BUREAU OF PRISONS REGARDING HIS DESIGNATION AND REFERRAL TO BOP SUBSTANCE ABUSE PROGRAMS.**

Mr D'Amico will be sentenced to a period of incarceration in this matter. As such he will be designated to an appropriate facility by the Designation and Sentence Computation Center (DSCC) in Grand Prairie, Texas. It has been counsel's experience that the DSCC does take into consideration recommendations from the Court regarding designation and other factors to be considered.

As such, we ask the Court to include a recommendation that the defendant be designated to the facility nearest his home on Long Island New York and especially a facility in the Northeast Region. This is especially important due to the many factors discussed herein and most importantly the need for him to have continuous contact with his family until his release date. Family contact has long been recognized as extremely important for an inmate in his reintegration to the outside world.

Additionally, we request that the Court include in the Judgment of Conviction herein a recommendation to the Bureau of Prisons ("BOP") that Mr. D'Amico be considered for the Drug and Alcohol Treatment programs. The PSR herein notes the Defendant's abuse of drugs and alcohol.

We further request that the Court recommend that he be designated to a facility nearest his parent's home in Floral Park NY, to wit, Fort Dix FCI in Fort Dix NJ. Fort Dix FCI is also one of the major facilities with a drug and alcohol treatment program which we feel are important for this man's rehabilitation.

Mr. D'Amico has been in continuous custody since his arrest by the Connecticut authorities for the same conduct for which the federal authorities later charged him in the indictment herein. The amount of time from his state arrest up to the date of conviction herein is January 22, 2010 to the date that the sentence is scheduled to be imposed, now, July 12, 2013, or roughly 3½ years. As discussed previously, it is our position that the BOP should grant him the entire time in custody as his credit for prior custody pursuant to 18 U.S.C. §3585(b).

In order to accomplish that, we therefore request that the Court direct as requested above that not only that the PSR reflect these dates but also that Court in the section of the Judgment of Conviction for Recommendations to the BOP include these dates with the statement that "none of the time from the defendant's arrest on January 22, 2010 to the date of sentence herein has been credited against another sentence."

We request that the Court use this exact language as this is the necessary language contained at the end of §3585 (b) for which the determination of whether he receives credit for prior custody is based.

## CONCLUSION

Defendant and counsel respectfully request that the Court consider the above and grant the

relief requested herein in finding a fair and proper sentence.

Dated: July 5, 2013

Respectfully submitted,

LAW OFFICE OF
RICHARD A. REHBOCK, ESQ.
Attorney for Defendant Bruce D'Amico
One Maple Run Drive
Jericho NY 11753
516 827-9583

s/ Richard A Rehbock

_____

By: Richard A. Rehbock

## CERTIFICATE OF SERVICE

I, RICHARD A. REHBOCK, ESQ., hereby certify that I have this day caused a copy of the attached Sentence Memorandum to be served upon the United States Attorney for the District of Connecticut and the US Probation Department via ECF.
DATED:      July 5, 2013

s/  Richard A Rehbock

_____

Richard A. Rehbock
